**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA**

CASE NO.: 8:16-cv-1511-T-36JSS

RUBENSTEIN LAW, P.A.

      Plaintiff and Counterdefendant,

v.

FRIEDMAN LAW ASSOCIATES, P.L.,
PHILIP A. FRIEDMAN, an individual, and
CHRISTOPHER K. LEIFER, an individual

      Defendants and Counterclaimant
_____/

FRIEDMAN LAW ASSOCIATES, P.L.,

      Third-Party Plaintiff,

v.

ROBERT M. RUBENSTEIN, an individual,
and NICOLE T. ARMSTRONG, an individual

      Third-Party Defendants.
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF
CONFIDENTIALITY ORDER WITHOUT ATTORNEYS' EYES ONLY PROVISION**

Plaintiff, Rubenstein Law, P.A. ("Rubenstein Law"), by and through its undersigned counsel, hereby opposes Defendants' Motion for Entry of Confidentiality Order Without Attorneys' Eyes Only Provision [DE 73] (hereinafter, the "Motion") and, in support thereof, states:

**I.    FACTUAL BACKGROUND SHOWING NEED FOR AEO PROTECTION**

The parties are competitors in the legal services industry, and this action arises out of Defendants' willful adoption and use of trademarks and domain names that are confusingly similar to Plaintiff's 1-800-FL-LEGAL mark. Plaintiff has been using its registered 1-800-FL-LEGAL

mark since 2006. DE 71-1, Am. Compl., Ex. 1. Since 2006, Plaintiff has invested tremendous financial and human capital building up valuable goodwill in its registered 1-800-FL-LEGAL mark.

On Tuesday, January 13, 2015 at 2:23 pm, nearly a decade after Plaintiff's first use of its mark, and in a deliberate effort to take advantage of Plaintiff's valuable goodwill in its 1-800-FL-LEGAL mark, Defendant Philip Friedman wrote an email to the Defendant law firm's Internet marketing company, which contains the following marketing request:

> "Gary, the South Florida [****] is advertising in Tampa. Can we maximize our ability to get business *from people who might see his board*? *Is one 800 Fl legal available as a website?* Can we buy placing ads *for anyone who might be looking for him*?

Exhibit "A," at SpecWeb00304 (expletive redacted) (emphasis added). Additionally, Mr. Friedman embedded into that email a photograph (*IMG_560.JPG*) of one of Plaintiff's billboards prominently featuring Plaintiff's 1-800-FL-LEGAL mark. *Id*.

In response to his request, Mr. Friedman received the following communication from the Internet marketing company:

> Yes if you want to do some paid advertising *I can target Rubenstein Law*, *1800fllegal, and fllegal* and we can see how much traffic you get. I can also *target his email address* so that if someone emails thru gmail *your ad will show up on their comp*. Would you want to target the Tampa area or all of Florida?

*Id*.. To which, Mr. Friedman responded:

> *I meant 1800fllegal*, *which Rubenstein already owns*. *Lets target* tampa bay only. What do you think of a $500 budget for the first month and see what happens?

*Id*., at SpecWeb00305 (emphasis added).

Thereafter, Mr. Friedman sought to heighten the targeting of Plaintiff's consumer-audience by further instructing the web designer to: "*Make the tag line fl-legal so they think its him*." *Id*., at SpecWeb00306 (emphasis added).[1]

After targeting consumers looking for Plaintiff on the Internet, Defendants set out to alter their logo to include a confusingly similar version of Plaintiff's 1-800-FL-LEGAL mark. Indeed, on July 28, 2015, Defendant Christopher Leifer wrote an email to a graphic designer, requesting that she create a logo featuring "888-FL-LEGAL." Exhibit C. Notably, a communication from that same designer provides a graphical representation of the history of Defendants' marks since their inception in 2009, which shows that until June 2015, the Defendants had never had a logo featuring the infringing 888-FL-LEGAL mark. Exhibit D.

These facts powerfully demonstrate that Defendants have intentionally sought to gain a competitive advantage by confusing consumers looking for Plaintiff and, thereby, capitalize on Plaintiff's goodwill in its registered 1-800-FL-LEGAL mark.

Although Plaintiff began producing hundreds of *non*-confidential documents with its Initial Disclosures on August 19, 2016 (Exhibit E), and has continued to supplement its production since such time (*see e.g*., Exhibit F), Plaintiff—*in light of the aforementioned facts*—reasonably believes that, if given access to such, Defendants would either intentionally or inadvertently misuse Plaintiff's confidential customer and supplier lists, sales and marketing plans, design, cost and financial data and other sensitive information which Plaintiff makes reasonable efforts to protect as secrets and, thus, have economic value as a result of not being generally known. Therefore, Plaintiff proposed a two-tier confidentiality order under which the parties could designate confidential, commercially sensitive, or proprietary information related to: technical data, research and development, marketing or other business plans, product or service information,

---

[1] Defendants have also targeted other competing law firms, such as Christopher Ligori & Associates, by taking out a sponsored advertisement on Google with the heading "Christopher Ligori Attorney – FLLegalGroup.com" asking consumers to "Call FL Legal Group…" Exhibit B.

customer information, trade secrets, competitive information, or financial information including, without limitation, sales and cost information, or any other sensitive information as AEO. *See* Exhibit G. However, Defendants have rejected such without any explanation[2] other than the mere statement that it would hinder Defendants' "meaningful participation" in this case.[3]

## II.   LEGAL STANDARD

### A.  *Attorneys Eyes Only Protection is Not Subject to Heightened Scrutiny*

The Supreme Court has noted that: "[b]ecause of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, 104 S. Ct. 2199, 2208, 81 L. Ed. 2d 17 (1984). Nevertheless, Defendants contend that protective orders containing attorneys eyes only ("AEO") provisions are disfavored in this District. Mot., at p. 3.

As support for this proposition, Defendants rely on memorandums filed by litigants in other cases, rather than any reasoned opinion of this Court. *Id.* (citing *Double Blue Jay Corp. v. Hansen Beverage Co.*, Case No. 8:10-cv-712-T-23TGW, and *Monster Energy Co. v. Consolidated Distributors, Inc. et al.*, Case No. 6:11-cv-329-ORL-22DAB).[4] Indeed, Defendants' Motion is nearly a verbatim copy of a portion of the opposition memorandum filed in *Double Blue Jay*, except for changes dictated by different parties and context. *See Double Blue Jay Corp.*, Doc. No. 46, at pp. 3-5. Notably, however, the actual orders issued in *Double Blue Jay* and *Monster Energy* do not provide any reasoning for the decisions. *Id.*, at Doc. No. 51; *Monster Energy*, at Doc. 166.

---

[2] Plaintiff inquired as to what "meaningful participation" the AEO provision would hinder, but Defendants' counsel chose not to respond to the inquiry. *See* Exhibit H.

[3] Defendants casually state that they are willing to produce their confidential business information without an Attorneys Eyes Only provision. Mot., at p. 5. However, thus far, Defendants have entirely failed to produce a *single* document—not even with their Initial Disclosures—whether confidential or not. Thus, their statement is rings hollow.

[4] Defendants also cited the decision in *Vistakon Pharmaceuticals, LLC v. Bausch & Lomb, Inc.*, 2009 WL 1616475; however, the Court's brief, two-sentence decision as to a confidentiality order contains no supporting reason for the statement that it "disfavors 'attorneys eyes only' provisions."

Thus, there is simply no holding by this Court that AEO provisions are disfavored in this District and, thereby, impliedly subject to heightened scrutiny.

To the contrary, the Eleventh Circuit has stated that a protective order, "if issued upon good cause and limited to pretrial civil discovery, is *not* subjected to heightened scrutiny." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (emphasis added). "[T]he sole criterion for determining the validity of a protective order is the statutory requirement of 'good cause.'" *Id.*, at p. 356. Although, this Circuit has also "superimposed a 'balancing of interests' approach" upon the determination. *Id*.

In *Lockheed Martin Corp. v. Boeing Co.*, No. 6:03CV796 ORL28KRS, 2005 WL 5278461, at *2 (M.D. Fla. Jan. 26, 2005), this Court found good cause because the parties were direct competitors who had sensitive information that, if revealed to a competitor, would provide a competitive advantage to the competitor. Accordingly, the *Lockheed Martin* court found several categories of information warranted protection, including: "commercial information that has economic value from not being generally known, and that has been the subject of reasonable efforts aimed at secrecy, and the disclosure of which is likely to result in a clearly defined and very serious injury to the designating party"; and "information that must be kept confidential pursuant to a statute, regulation, contract or court order." *Id.*, at *2-3.

As to whether to restrict access to outside counsel and experts, the *Lockheed Martin* court focused on the issue on whether the receiving party's in-house counsel or other representative is involved in competitive decision making, such that he or she would have a difficult time compartmentalizing the knowledge gained through access to the information. *Id.*, at *3. Similarly voicing concern on this point, the court in *Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*, 1994 WL 177795, at *1 (S.D.N.Y. May 5, 1994), stated:

> [n]or should such access be permitted merely because in-house counsel is bound by the rules of professional responsibility, since there remains a risk of inadvertent use or disclosure of the information. Rather, the decision turns largely on the specific role of in-house counsel within the business: whether he or she has a part in the type of competitive decision-making that would involve the potential use of the confidential information."
>
> . . .
>
> [I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *F.T.C. v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C.Cir.1980). Given the extent of Mr. Hoffman's involvement in strategy meetings, such compartmentalization would be nigh impossible.

*Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*, 1994 WL 177795, at *2-3.

Among the types of information that this District has found "may not be disclosed to individuals engaged in competitive decisionmaking" are "sales and marketing plans, financial forecasts, margin, pricing, design, cost and customer information." *Lockheed Martin Corp.*, 2005 WL 5278461, at *2-3, (citing *U.S. Steel Corp.,* 730 F.2d at 1468 n. 3; *Dentsply Int'l, Inc.,* 187 F.R.D. at 161-62). Notably, the *Lockheed Martin* court concluded that disclosure of such competitively sensitive information is likely to result in a clearly defined and specific harm to the designating party. *Id.*, at *4.

In *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555–56 (C.D. Cal. 2007), the court also found that, in trademark infringement cases, customer and supplier lists "are customarily produced subject to an "attorney's eyes only" order." *Id.*; *see also RSI Corp. v. Int'l Bus. Machines Corp.*, 2012 WL 3095439, at *1 (N.D. Cal. July 30, 2012) ("Courts routinely prevent the disclosure of customer lists to the employees of direct competitors, particularly where those employees are in charge of marketing or sales"). Moreover, the *Nutratech* court found that the moving party's fear of competitive harm resulting from disclosure of its supplier and customer lists to the opposing party's president was legitimate. *Nutratech, Inc.*, 242 F.R.D. at 555–56. Accordingly, the *Nutratech* court ordered that the disclosure of customer lists, supplier lists, and revenue and sales information, be produced only pursuant to an AEO restriction. *Id.*

Similarly, in *Vesta Corset Co. v. Carmen Foundations, Inc.*, 1999 WL 13257, at *3 (S.D.N.Y. Jan. 13, 1999), the court found that "[p]rotective orders that limit access to certain documents to counsel and experts are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information." *Id.*; *see also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 188 (S.D.N.Y. 2014); *Sullivan Mktg.*, 1994 WL 177795, at *1 (the court reasoned that: "[t]hough perhaps not on a par with a 'secret formula,' pricing and marketing strategies are widely held to be confidential business information that may be subject to a protective order"). In *Vesta Corset*, like here, the party objecting to the AEO provision "had not demonstrated a need for its employees to access the confidential information sufficient to outweigh [the] concerns" as to the competitive harm that could result from disclosure of commercially sensitive information to a competitor. *Vesta Corset Co.*, 1999 WL 13257, at *3. Indeed, the *Vesta Corset* court found that disclosure of confidential commercial information to a competitor "raises concerns of commercial espionage" and, therefore, limited such disclosures to counsel and experts. *Id.*; see also *ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc.*, No. 08 CIV.5737 RMB RLE, 2009 WL 105503, at *3 (S.D.N.Y. Jan. 14, 2009) (finding that, although neither party submitted affidavits, the disclosure of customer lists could cause economic harm, considering that the parties are direct competitors).

     B.   *Competitive Decision Makers Must Show Actual Prejudice*

Notably, in *Nutratech*, the opposing party made nearly the identical argument that Defendants are making here, arguing that "the prosecution of its case will be impaired if this information is restricted to 'attorney's eyes only'" because the party's principal needs to "assist, advise and direct Nutratech's counsel with the direction and conduct of discovery, and with litigation strategy." *Nutratech, Inc*, 242 F.R.D. 552, 555–56. However, the *Nutratech* court found such argument "is not persuasive," explaining that: "[i]f this were true, then courts would never issue "attorney's eyes only" protective orders in cases involving customer and supplier lists, as

7

plaintiffs would always 'need' to see this information to prosecute their cases." *Id*. To prevent such omnipresent need for parties to assist, advise and direct counsel from becoming a bar to AEO provisions, the court in *Life Techs. Corp. v. Ebioscience Inc.* explained that: "[i]f the Litigation Team is involved in competitive decision making, [it] must demonstrate actual prejudice to their case if access is not granted." *Life Techs. Corp.*, No. 10CV2127 IEG NLS, 2011 WL 1597441, at *1–2 (S.D. Cal. Apr. 26, 2011).

However, "increased difficulty in managing litigation is not sufficient to show actual prejudice." *Id*. Furthermore, where the party has been represented by outside counsel from the beginning of the litigation, "[t]he prejudice that [the party] would suffer from the more restrictive confidentiality order would be minimal." *Sullivan Mktg.*, 1994 WL 177795, at *3.

### III. DEFENDANTS' PREVIOUS EFFORTS TO TARGET PLAINTIFF'S CUSTOMERS SHOWS AN INCREASED RISK OF MISUSE OF CONFIDENTIAL INFORMATION

Given the facts set forth in Section I, *supra*, it cannot be doubted that good cause exists to protect Rubenstein Law's sensitive confidential information from disclosure to Defendants, and that a balancing of interests favors restricting disclosure of such information to outside counsel and any disclosed experts only. Indeed, unlike Defendants' vague need for "meaningful participation," the Plaintiff's need for protection is demonstrable by means of specific evidentiary facts.

The parties are competitors in the legal services industry. *See* DE 1, Count III, and DE29, Counterclaims I-II. Unfortunately, Defendants have chosen to employ unfair tactics to engage in competition against Rubenstein Law. As set forth in more detail in Section I, *supra*, Defendants knowingly sought to take advantage of the valuable goodwill Plaintiff had built up in its 1-800-FL-LEGAL trademark by requesting that their Internet marketing company target consumers viewing Plaintiff's billboards and seeking Plaintiff's website. Ex. "A,"

at SpecWeb00304.  In other words, Defendants deliberately attempted to create confusion "for anyone who might be looking for [Plaintiff]." *Id*.

The documents show that Defendants: took a photograph (*IMG_560.JPG*) of Plaintiff's billboard, which prominently features Plaintiff's 1-800-FL-LEGAL mark, sent that photo to their Internet marketing company, and expressly requested that it take steps to target Plaintiff's consumers "*so they think its him*." *Id*., at SpecWeb00306 (emphasis added).  Furthermore, Defendants made an effort to cut as wide a swath of confusion as possible by also: (a) seeking to obtain confusingly similar Internet domain names, even though they knew that "**Rubenstein already owns**" the 1800fllegal.com domain name, *id*., at SpecWeb00305, and (b) targeting Plaintiff's email addresses so that if a consumer used gmail, Defendants' advertisement would show up on the consumer's computer when he or she tried to contact the Plaintiff, *id*., at SpecWeb00304; and (c) altering their logo to include a confusingly similar version of Plaintiff's 1-800-FL-LEGAL mark.  Ex.s C and D.

Defendants have also targeted other competing law firms, such as Christopher Ligori & Associates, by taking out deceptive sponsored advertisements on Google using a heading that contains the name of its competitor.  *See, e.g*., Ex. B.

These facts show that Plaintiff's fear of competitive harm is legitimate.  Moreover, the documents show that both Mr. Friedman and Mr. Leifer actively took part in such competitive decision making.  *See* Ex.s A and C-D.

Finally, with respect to a balancing of the parties' interests, the evidence shows that while there is a high risk of misuse of Plaintiff's sensitive competitive information, there is minimal risk of harm to Defendants' interests in managing this litigation.  Indeed, given their documented prior efforts to target Plaintiff's consumers, domain names and email accounts, it appears that it would be nearly impossible for Defendants to compartmentalize and selectively suppress sensitive confidential information learned through discovery in this matter.  As the *Lockheed Martin* court

found, such a disclosure risk is a clearly defined and specific harm. *Lockheed Martin*, 2005 WL 5278461, at *4.

In comparison, Defendants have failed to demonstrate any need to access Plaintiff's highly confidential, competitive information, let alone any actual prejudice that is sufficient to outweigh the legitimate, documented concerns of competitive harm outlined above. *See Vesta Corset Co.*, 1999 WL 13257, at *3. Defendants have experienced, outside trademark counsel, who has represented Defendants since the commencement of this action. Thus, any prejudice that Defendants would purportedly suffer from an AEO provision would be minimal. *See Sullivan Mktg.*, 1994 WL 177795, at *3.

In sum, in light of the evidence of Defendants' intent and efforts to target consumers looking for Rubenstein Law, there is good cause for entry of Plaintiff's proposed two-tier Confidentiality Order containing an AEO provision and doing so would serve the interests of justice.

## IV. DEFENDANTS FAILED TO CONFER IN GOOD FAITH

Lastly, on the morning of November 9, 2016, the parties met and conferred with respect to Plaintiff's objections to Defendants' First Set of Requests for Production. During said conference, the parties discussed Plaintiff's desire for a two-tier Confidentiality Order, and Defendants' general objection thereto. The result of such discussion was an agreement that Defendants would draft a joint motion for entry of a Confidentiality Order, which set forth both parties' respective positions and proposed orders. Such an agreement was in keeping with this Court's Order dated November 1, 2016 (DE 69), which directed the parties to: "coordinate and work toward a resolution of any discovery disputes." DE 69. However, without prior warning or discussion, Defendants' counsel broke the agreement to file a coordinated, joint motion and, instead, filed the instant unilateral motion. *See* Exhibit J (email from Def. counsel subsequent to cmecf notice). Defendants' conduct not only violates the parties' agreement, but it also violates both this Court's

order and the spirit of Local Rule 3.01(g). Accordingly, Plaintiff respectfully requests that it be awarded its attorneys' fees for having to respond to this unilateral motion.

## V. CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Motion for Entry of Confidentiality Order Without Attorneys' Eyes Only Provision [DE 73] and, instead, enter Plaintiff's proposed two-tier Confidentiality Order in the form attached as Exhibit G hereto. Furthermore, Plaintiff respectfully requests that it be awarded its attorneys' fees for having to respond to this unilateral motion.

Dated: November 22, 2016

Respectfully submitted,

**COZEN O' CONNOR**
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5001
Facsimile: (305) 358-3309

By: /s/ *Susan J. Latham*
   James A. Gale / Fla. Bar no. 371726
   jgale@feldmangale.com
   Susan J. Latham / Fla. Bar no. 687391
   slatham@feldmangale.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY certify that on November 22, 2016, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

s/ *Susan J. Latham*<br>SUSAN J. LATHAM

**SERVICE LIST**

*Rubenstein Law, P.A. v. Friedman Law Associates, P.L.,*
*Philip A. Friedman, and Christopher K. Leifer*
United States District Court, Middle District of Florida
Case No.: 8:16-cv-01511-CES-JSS

Matthew S. Nelles
**Broad and Cassel**
One Financial Plaza
Suite 2700
Fort Lauderdale, FL 33394
Email: mnelles@broadandcassel.com
*Attorney for Defendants*

12